RACHAEL LAVI, Bar No. 294443
rlavi@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
Telephone: 310.553.0308
Facsimile:  310.553.5583

LYNDSEY M. MARCELINO, Bar No. 299879
lmarcelino@littler.com
LITTLER MENDELSON, P.C.
1300 IDS Center
80 S. 8th Street
Minneapolis, MN  55402
Telephone:  612.630.1000

Attorneys for Defendant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WALTER PARRISH, Individually, and on Behalf of Other Members of the Public Similarly Situated and the State of California,<br><br>Plaintiff,<br><br>v.<br><br>THE OKONITE COMPANY, INC., a corporation; and DOES 1 through 25, inclusive,<br><br>Defendant. | Case No.<br><br>**DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION**<br><br>[28 U.S.C. §§ 1331, 1441, AND 1446]<br><br>Complaint Filed: August 26, 2020<br>(Santa Barbara County Superior Court Case  No: 20CV02753) |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF WALTER PARRISH AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant THE OKONITE COMPANY ("Okonite" or "Defendant"), contemporaneously with the filing of this Notice, are effecting the removal of the above-referenced action from the Superior Court of the

State of California, County of Santa Barbara, to the United States District Court for the Central District of California.

The removal is based on 28 U.S.C. sections 1331 and 1441(a), specifically, on the following grounds:

## I.   STATEMENT OF JURISDICTION

1.      This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §1332(d). CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

2.      In the alternative, this Court also has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(b), because it is a civil action that presents a federal question.

## II.   VENUE

3.      This action was filed in the Superior Court of California for the County of Santa Barbara. Venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 84(b), 1391, 1441, and 1446.

## III.   PROCEDURAL HISTORY

4.      On or about August 26, 2020, Plaintiff, WALTER PARRISH, commenced the above-captioned civil action in the Santa Babara County Superior Court by filing a Complaint entitled *Parrish v. The Okonite Company,* docketed as Case No. 20CV02753. On August 31, 2020, the Complaint, Summons, Civil Case Cover Sheet, Notice of Case Management Conference, and Alternative Dispute Resolution

Information Package were served on Defendant. True and correct copies of the Complaint and the accompanying documents are attached as **Exhibit A** to the Declaration of Lyndsey Marcelino in Support of Defendants' Notice of Removal of Action ("Marcelino Decl.") and incorporated herein by reference. (Marcelino Decl., ¶ 3, Exhibit A.)

5.      Plaintiff's Complaint asserts causes of action for: (1) On-Duty Breaks; (2) Failure to Pay Wages at Termination; and (3) Inaccurate Wage Statements.

6.      On September 29, 2020, Defendant filed an Answer to Complaint in the Superior Court for Santa Barbara County. A true and correct copy of the Answer is attached as **Exhibit B** to the Declaration of Lyndsey Marcelino in Support of Defendants' Notice of Removal of Action and incorporated herein by reference. (Marcelino Decl., ¶ 4, Exhibit B.)

7.      To Defendants' knowledge, no further process, pleadings, or orders related to this case have been filed in or issued by the Superior Court for the State of California, County of Santa Barbara, or served by any other party other than as described above. Exhibits A and B referenced above and incorporated herein satisfy the requirements of 28 U.S.C. section 1446. (Marcelino Decl., ¶ 5.)

**IV.    TIMELINESS OF REMOVAL**

8.      An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the Defendant within 30 days of service on defendant of the initial pleading. See 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the summons and complaint). Removal of this action is timely because this Notice of Removal has been filed within 30 days from August 31, 2020, when Defendant was served with the Complaint. 28 U.S.C. § 1446(b).

**V.    NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT**

9.      Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, the undersigned is providing

written notice of such filing to Plaintiff's counsel of record: Mohammed K. Ghods and Jeremy A. Rhyne, Lex Opus, 2100 N. Broadway, Suite 210, Santa Ana, CA 92706 and Ruben Escobedo, Workworld Law Corp., 731 S. Lincoln Street, Santa Maria, CA 93458. In addition, a copy of Defendant's Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of Santa Barbara. (Marcelino Decl. ¶ 6.)

## VI.   CAFA JURISDICTION

10.   CAFA grants United States district courts original jurisdiction over: (a) civil class action lawsuits filed under federal or state law; (b) where the alleged class is comprised of at least 100 individuals; (c) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (d) where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this Notice of Removal.

### A.   Plaintiff Filed A Class Action Under State Law

11.   Plaintiff filed his action as a class action based on alleged violations of California state law. (Marcelino Decl. ¶ 3, Exh. A, Complaint ¶¶ 20, 21, 22, 23 and Prayer for Relief.)

### B.   The Proposed Class Contains At Least 100 Members

12.   28 U.S.C. § 1332(d)(5)(B) states that the provisions of CAFA do not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100."

13.   Plaintiff filed this action on behalf of the class and subclasses defined as:

> "Any and all persons who are or were employed as an hourly-paid non-exempt employee by The Okonite Company, Inc. at its Santa Maria, California plant from April 6, 2016, until resolution of this lawsuit ("4-Year Statutory Period") who were required to remain at the plant during meal-and-rest breaks or required to obtain permission to leave the premises during meal-and-rest breaks (collectively, the "Class Members").

> Any and all Class Members who are or were employed from April 6, 2017, until resolution of this lawsuit ("3-Year Statutory Period") who were either discharged or resigned during the Statutory Period without timely payment of all earned wages at the time of separation (collectively, the "Waiting Time Class Members").
>
> All Class Members who are or were employed from April 6, 2019, until resolution of this lawsuit ("1-Year Statutory Period") (collectively, the "Paystub Subclass Members").

(Marcelino Decl. ¶ 3, Exh. A, Complaint ¶¶ 14-16.)

14. Based on a review of Okonite's data and records, Okonite has employed at least 207 non-exempt employees working in its California locations between August 26, 2017 and September 2020. (Declaration of Cathy Lehmann in Support of Defendant's Notice of Removal ("Lehmann Decl.") at ¶ 5.))  Therefore, Defendant's internal records demonstrate that there are well over 100 putative class members in this case.

## C. Defendant Is Not A Governmental Entity

15. Under 28 U.S.C. § 1332(d)(5)(A), CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

16. Defendant is a company, not a state, state official, or other government entity exempt from CAFA.

## D. There Is Diversity Between At Least One Class Member And One Defendant

17. CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes, and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 340 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. *See Strotek Corp. v. Air Trans. Ass'n of Am.*, 300 F.3d 1129,

1130-1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

18.     For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that person's domicile is the place he resides with the intention to remain). Furthermore, allegations of residency in a state court complaint create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Smith v. Simmons*, No. 1:05-CV-01187-OWW-GSA, 2008 WL 744709, at *7 (E.D. Cal. Mar. 18, 2008) (finding a place of residence provides "'prima facie' case of domicile").

19.     Plaintiff alleges that he is an individual residing in the County of Santa Barbara, California (Marcelino Dec. ¶ 3, Exh. A, Complaint ¶ 6.) Plaintiff then filed the present action in Santa Barbara County. Defendant is informed and believe that Plaintiff, at the time this action was commenced, was and is a citizen and resident of the State of California. See *Albrecht v. Lund*, 845 F.2d 193, 194-95 (9th Cir. 1988) (finding citizenship requirement satisfied where plaintiff's complaint contained allegations consistent with diversity and plaintiff failed to contest the petition for removal); see also *Anderson v. Watts*, 138 U.S. 694, 706 ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary").

20.     Defendant is not a citizen of the State of California. "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

21.     Defendant is a corporation organized and existing under the laws of New Jersey and its principal place of business is located in Ramsey, New Jersey, where it

operates its business. (Lehmann Decl., ¶ 3.)

22.     The majority of Defendant's corporate officers work from its headquarters at Ramsey, New Jersey. Accordingly, New Jersey is primarily where Defendant's operates its business, where its primary administrative functions and day-to-day operations are primarily performed, and where its corporate books are maintained. (Lehmann Decl., ¶ 4.)

23.     The Supreme Court has explained that a corporation's principal place of business is determined under the "nerve center" test. See *Hertz Corp. v. Friend*, 599 U.S. 77, 80-81 (2010). Under the "nerve center" test, the principal place of business is the state where "a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* The Supreme Court further explained in Hertz that a corporation's nerve center "should normally be the place where the corporation maintains its headquarters" and that a corporation's nerve center is a "single place." *Id*. at 93.

24.     As explained by the United States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181; 175 L. Ed. 2d 1029 (2010), "the phrase 'principal place of business' in § 1332(c)(1) refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's activities, *i.e.*, its 'nerve center,' which will typically be found at its corporate headquarters."

25.     Accordingly, for purposes of removal, Defendant is a citizen of the State New Jersey.  Defendant is not a citizen of California and diversity of citizenship exists as between Defendant and Plaintiff because Plaintiff is a citizen of the State of California.

26.     Doe defendants in this case have no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded").

E.     **The Amount In Controversy Exceeds $5,000,000**[1]

27.     "Under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Where, as here, the Complaint is silent as to the amount in controversy, a preponderance of the evidence standard applies. *See Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 397 (9th Cir. 2010), *citing Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).

28.     Although Defendant expressly denies any liability for the damages alleged in Plaintiff's Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied the Court must presume that Plaintiff will prevail on his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994)) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability"). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [defendant's] liability." *Lewis*, *supra,* 627 F. 3d at 400 (9th Cir. 2010). Stated differently, the ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what defendants might actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Investments, Inc.* 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants are still free to challenge the actual amount of damages at trial because they are only estimating the amount in controversy).

29.     CAFA authorizes the removal of class actions in which, among other factors mentioned above, the amount in controversy for all class members exceeds $5

---

[1] The alleged damages calculations contained herein are for purposes of removal only. Defendant denies that Plaintiff or the putative class are entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's alleged damages in this case.

million. See 28 U.S.C. § 1332(d). Here, the Complaint places more than $5 million in controversy.

30.     The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. §1446(a). The United States Supreme Court in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), recognized that "as specified in section 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required. *Id.* Otherwise, "the defendant's amount in controversy allegation should be accepted" just as plaintiff's amount in controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id.* at 553. "[N]o antiremoval presumption attends cases invoking CAFA." *Id.* at 554.

31.     Here, Plaintiff does not allege the amount in controversy. When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so, and the notice of removal must simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Company LLC*, 135 S. Ct. at 554.

32.     While Defendant denies Plaintiff's claims of wrongdoing and denies his request for relief therein, as specifically outlined below, the factual allegations in Plaintiff's Complaint and the total amount of damages, penalties, attorneys' fees, and other monetary relief at issue in this action clearly demonstrate that the total amount in dispute is far in excess of this Court's jurisdictional minimum. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999) (facts presented in notice of removal, combined with plaintiffs' allegations, sufficient to support finding that jurisdictional limits satisfied). "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof [as to CAFA's amount-in-controversy requirement], the chain of reasoning and its underlying assumptions must be reasonable." *LaCross v. Knight*

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

*Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).

33.     Plaintiff seeks to recover damages, penalties, and attorney's fees for alleged failure to provide meal and rest breaks, inaccurate wage statements, and failure to pay all wages upon separation. (Marcelino Decl. ¶ 3, Exh. A, Complaint, Prayer for Relief.)

34.     Specifically, Plaintiff's Complaint alleges that Defendant "had a policy and practice of requiring Class members including Plaintiff to remain at the plant during their meal-and-rest breaks in violation of Labor Code section 226.7." (Marcelino Decl. ¶ 3, Exh. A, Complaint, ¶ 20.)

35.     Plaintiff's complaint further alleges that "as a result of Defendants' failure to pay premium wages, minimum wages, and overtime wages…Defendants also regularly committed derivative violations of the California Labor Code, including a failure to pay wages in a timely manner…and failure to issue accurate wage statements…" (Marcelino Decl. ¶ 3, Exh. A, Complaint, ¶ 21.)

36.     Throughout the Complaint, Plaintiff alleges Defendant uniformly adopted and maintained "policy and practice" that were enforced company-wide. (*See e.g.*, Marcelino Decl. ¶ 3, Exh. A, Complaint, ¶¶ 20 and 31.) As such, a 100% violation rate may be considered reasonable based on Plaintiff's allegation. *See e.g., Mejia v. DHL Express (USA), Inc.,* 2015 U.S. Dist. LEXIS 67212, *10-11 (C.D. Cal. May 21, 2015) (100% violation rate may be based on allegations of uniformly adopted and maintained policies).

37.     While Defendant denies Plaintiff's claims of wrongdoing and denies his request for relief therein, as specifically outlined below, the factual allegations in Plaintiff's Complaint and the total amount of damages, penalties, attorneys' fees, and other monetary relief at issue in this action clearly demonstrate that the total amount in dispute is far in excess of this Court's jurisdictional minimum. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999) (facts presented in notice of removal, combined with plaintiffs' allegations, sufficient to support finding that jurisdictional limits satisfied).

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

10.

"[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof [as to CAFA's amount-in controversy requirement], the chain of reasoning and its underlying assumptions must be reasonable." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).

38.     For purposes of removal, Defendant must assume (without conceding) the truth of Plaintiff's allegations for purposes of assessing amount in controversy. Based on a preliminary review of its records, Defendant has employed approximately 207 non-exempt employees in California between August 26, 2017 and  September 2020. (Lehmann Decl. ¶ 5.)

39.     Pursuant to the Agreement between The Okonite Company and the Teamsters Local 986, May 18, 2015 to May 17, 2020 (hereinafter the "CBA"), which contains specific language governing time worked, wages and wage payment, overtime, and meal and rest periods, the minimum wage rate applicable to putative class members during the relevant time period is $21.12. A true and correct copy of the CBA is attached as **Exhibit A** to the Declaration of Cathy Lehmann and incorporated herein by reference. (Lehmann Decl. ¶ 8, Exh. A, pg. 52.)

### 1.     Amount In Controversy –Plaintiff's First Cause of Action for Meal and Rest Period Premiums.

40.     In the First Cause of Action, Plaintiff seeks damages for alleged missed meal and rest periods. (Marcelino Decl. ¶ 3, Exh. A, Complaint ¶¶ 25-42.) Specifically, Plaintiff alleges, "Plaintiffs and Class Members were not free to leave the plant premises during their breaks." (Marcelino Decl. ¶ 3, Exh. A, Complaint, ¶ 30.) Plaintiff further alleges "Defendants had an illegal policy and practice of prohibiting Class Members from leaving its premises during meal periods and/or requiring Class Members to obtain special permission before leaving the premises during their meal periods, creating a de facto rule and employer expectation that Class Members would remain on the premises and be available to work during such breaks." (Marcelino Decl. ¶ 3, Exh. A, Complaint ¶ 31.)

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

11.

41.     An employee denied a meal period may be entitled to a premium in the amount of an additional hour's wages. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

42.     An employee denied a rest break may be entitled to a premium in the amount of an additional hour's wages. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

43.     While Defendant denies the validity and merit of Plaintiff's missed meal and rest break claim, for purposes of removal only, based on a preliminary review of their records, the putative class of 207 employees worked 24,052 workweeks during the statutory period between August 26, 2017 and September 2020 based on their hire and termination dates. (Lehmann Decl. ¶ 5.)  The lowest wage rate applicable to employees pursuant to the CBA during the relevant time period is $21.12. (Lehmann Decl. ¶ 8, Exhibit A, pg. 52.)

44.     Based on Plaintiff's allegation that Plaintiff and the putative class members were not allowed to leave the premises for any meal or rest breaks, Defendant assumed 5 meal break violations workweek. Applying the average hourly rate across the class, the amount in controversy for the missed meal period claim totals **$2,539,891.20** (= 24,052 workweeks * 5 missed meal period per workweek * $21.12).

45.     Based on Plaintiff's allegation that Plaintiff and the putative class members were not allowed to leave the premises for any meal or rest breaks, Defendant assumed 5 rest break violations workweek. Applying the average hourly rate across the class, the amount in controversy for the missed meal period claim totals **$2,539,891.20** (= 24,052 workweeks * 5 missed meal period per workweek * $21.12).

46.     The total amount in controversy for the alleged meal and rest break premiums totals **$5,079,782.40** (= $2,539,891.20 meal period premiums + $2,539,891.20 rest break premiums).

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

2.      **Amount In Controversy—Plaintiff's Second Cause of Action for Waiting Time Penalties.**

47.     In the Second Cause of Action, Plaintiff seeks waiting time penalties pursuant to Cal. Lab. Code § 203. (Marcelino Decl.¶ 3, Exh. A, Complaint, ¶¶ 43-47.) The statute of limitations for Plaintiff's Cal. Lab. Code § 203 waiting time penalty claim is three years. *Pineda v. Bank of America*, N.A., 50 Cal. 4th 1382, 1935 (2010) ("no one disputes that when an employee sues to recover both unpaid final wages and the resulting section 203 penalties, the suit is governed by the same three-year limitations period that would apply had the employee sued to recover only the unpaid wages").

48.     Plaintiff demands up to thirty (30) days of pay as penalty for not paying all wages due at time of termination for the putative class. (Marcelino Decl.¶ 3, Exh. A, Complaint, ¶¶ 44 and 47.)

49.     Defendant denies the validity and merit of Plaintiff's waiting time penalties claim. For purposes of removal, based on a preliminary review of their records, Defendant estimates that 56 employees have separated from employment since August 26, 2017. (Lehmann Decl. ¶ 6.) The lowest wage rate applicable to employees pursuant to the CBA during the relevant time period is $21.12. (Lehmann Decl. ¶ 8, Exh. A, pg. 52.)

50.     Although Defendant denies Plaintiff's allegations, including any alleged damages, based on the reasonable assumption that the putative class members would receive waiting time penalties for thirty days, an estimate of the amount in controversy related solely to waiting time penalties is **$283,852.80** (= 8 hours a day * 30 days * $21.12 * 56 employees).

3.      **Amount In Controversy—Plaintiff's Third Cause of Action for Inaccurate Wage Statements.**

51.     In his Third Cause of Action, Plaintiff alleges that Defendant failed to "furnish Plaintiff and Paystub Subclass Members complete and accurate wage statements upon each payment of wages…" (Marcelino Decl. ¶ 3, Exh. A, Complaint ¶

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

13.

52.) Plaintiff seeks all available statutory penalties, damages, attorneys' fees, and costs of suit. (*Id.* at ¶ 55 and Prayer for Relief.)

52. Cal. Lab. Code § 226(e) provides for a statutory penalty for violations of Cal. Lab. Code § 226(a)'s wage statement requirements of $50 or actual damages per employee for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate amount of $4,000 per employee. Cal. Lab. Code § 226(a). The statutory period for Labor Code § 226(e) penalties is one year. Cal. C.C.P. § 340.

53. For purposes of removal, based on a preliminary review of its records, at least 166 non-exempt employees worked approximately 8,724 pay periods in California from the period between August 26, 2019 to September 2020 based on employees hire and termination dates, and based on a weekly pay frequency. (Lehmann Decl. ¶ 7.) None of these employees exceeded the $4,000 cap per employee.

54. Defendant denies the validity and merit of Plaintiff's wage statement claim. However, the amount in controversy for Plaintiff's wage statement claim is **$629,250** ( = (166 non-exempt employees   x $50 per initial pay period) + (8,558 remaining pay periods x $100 per subsequent pay period), with a $4,000 cap per employee).

### 4. Amount In Controversy—Plaintiff's Claim for Attorneys' Fees.

55. Plaintiff seeks attorneys' fees and costs in his Complaint. (Marcelino Decl. ¶ 3, Exh. A, Complaint, Prayer for Relief.) It is well-settled that claims for statutory attorneys' fees are to be included in the amount in controversy. *See*, *e.g.*, *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 549 U.S. 822 (2006); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

56. In California, it is not uncommon for an attorneys' fee award to be 25 to 33 percent of a settlement or judgment. *See, e.g.*, *McGuigan v. City of San Diego*, 183

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

14.

Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties, and waiting time penalties); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1216-1218 (2008) (affirming award of $727,000 in attorneys' fees plus a multiplier that equated to total fees of $1,199,550 in class case involving violations of a living wage ordinance, the California Labor Code, as well as unfair competition and contract claims); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

57.     The attorneys' fees benchmark in the Ninth Circuit is 25 percent. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent."); *Lo v. Oxnard Euro. Motors, LLC*, 2012 WL 1932283, at *3 (S.D. Cal. May 29, 2012) ("The Ninth Circuit has accepted as a benchmark for an attorneys' fees awards a twenty-five percent of the common fund recovery.").

58.     Based on Plaintiff's allegations, an estimate of the amount in controversy for his claims totals **$5,992,885.20.** This subtotal exceeds $5,000,000 absent any inclusion of attorneys' fees. However, taking into account attorneys' fees at the benchmark percentage of 25 percent further increases the amount in controversy by **$1,498,221.30** for a total amount in controversy of **$7,491,106.50.**

## VII.   CAFA SUMMARY

59.     Removal of this action is therefore proper as the aggregate value of Plaintiff's class causes of action for unpaid meal and rest periods premiums, non-compliant wage statements, waiting time penalties, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5 million. See 28 U.S.C. § 1332(d)(2).

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

15.

60.     Further, in support of Plaintiff's cause of action for meal and rest period damages, Plaintiff alleges that "[p]ursuant to California Business and Proessions Code §§ 17200, et seq., Plaintiff and Class Members are entitled to restitution of the wages withheld and retained by Defendants' during the 4-Year Statutory period…." (Marcelino Decl. ¶ 3, Exh. A, Complaint ¶ 42 and Prayer for Relief.) Alleging a UCL violation may extend the statute of limitations for Plaintiff's and the putative class' minimum wage and overtime claims from three to four years from the filing of the Complaint, which in this case, extends the statute of limitations back to July 21, 2016. *See* CAL. BUS. & PROF. CODE § 17208; *Cortez v. Purolater Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).  Indeed, were damages extended four years, the amount in controversy would only increase well beyond the $5,000,000 threshold.

| Plaintiff's Alleged Class Claim | Amount in Controversy for the Alleged Putative Class Members (3 year SOL) | Amount in Controversy for the Alleged Putative Class Members (4 year SOL)[2] |
| --- | --- | --- |
| Meal & Rest Period | **$5,079,782.40** | **$6,482,100.00** |
| Waiting Time Penalties | **$283,852.80** | **$275,520.00** |
| Inaccurate Wage | **$629,250.00** | **$629,250.00** |
| Attorneys' Fees | $1,498,221.30 | $1,846,717.50 |
| **Amount in Controversy** | **$7,491,106.50** | **$9,233,587.50** |

61.     Moreover, were damages exposure extended through trial, the totals would be even higher. *Mejia v. DHL Express* (USA), Inc., 2015 U.S. Dist. LEXIS 67212, *6, 2015 WL 2452755 (C.D. Cal. May 21, 2015) (where the Complaint does not cut off class allegations as of the date the complaint was filed, including post-filing time in

---

[2] Assuming an estimated 227 employees who worked 31,620 workweeks and applying the lowest applicable wage rate  of $20.50, applicable to all employees pursuant to the CBA with an estimate of

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

removal computations is consistent with the allegations in the complaint and permissible).

## VIII. FEDERAL QUESTION JURISDICTION

62. This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(b), because it is a civil action that presents a federal question.

63. Plaintiff's claim requires interpretation of a collective bargaining agreement ("CBA") and thus is completely preempted by federal law under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Section 301 of the LMRA provides "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a); *Firestone v. Southern Cal. Gas. Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000). To ensure uniform interpretations of CBAs, federal law preempts the use of state contract law in collective bargaining agreement interpretation and enforcement. *See Lingle v. Norge Div. of Magic Chef Inc.*, 486 U.S. 399, 411 (1988).

64. Further, all state law claims raised by a union-represented employee that require interpretation of a CBA must be brought pursuant to Section 301. *Allis-Chalmers Corp. v. Lueck*, 571 U.S. 202, 211 (1985). "The preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement . . . and any state claim whose outcome depends on analysis of the terms of the agreement." *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988); *see Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction").

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

17.

65.     Section 301 specifically has been held to preempt California state law claims that are substantially dependent upon interpretation of a CBA. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019); *Firestone*, 219 F.3d at 1066-67. This is so even where interpretation was required to evaluate the employer's defense to a plaintiff's state law cause of action. *Curtis*, 913 F.3d at 1152 ("Although normally federal preemption is a defense that does not authorize removal to federal court, § 301 has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'") (citing *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)). These principals apply equally to actions seeking civil penalties pursuant to the Private Attorneys General Act, Cal. Lab. Code § 2698 *et seq.* ("PAGA"). *Franco v. E-3 Sys.*, No. 19-cv-01453-HSG, 2019 WL 6358947, at *4 (N.D. Cal. Nov. 8, 2019) (denying motion to remand, and expressly rejecting Plaintiff's argument that § 301 cannot preempt PAGA claims).[3]

A.     **Plaintiff's Employment Was Governed by a CBA**.

66.     In the Complaint, Plaintiff alleges that he worked for Defendant "prior to and throughout the statutory period from April 6, 2016 through his retirement effective December 31, 2019." (Marcelino Decl. ¶ 3, Exh. A, Complaint ¶ 19.) Plaintiff's hourly rate of pay was never less than 30 percent more than the California state minimum wage for employers with more than 26 employees. (Lehmann Decl., ¶ 9.) The terms and conditions of Plaintiff's alleged employment with Defendant was governed by a CBA between Defendant and the Teamsters Local 986 ("Union") (*Id.*, ¶ 8).

67.     The Union is a labor organization within the meaning of Section 2(5) of the NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

68.     Defendant is an employer within the meaning of the LMRA, 29 U.S.C. § 152(2).

---

[3] Plaintiff's complaint alleges his intent to amend and add a claim under the Private Attorneys General Act, Cal. Lab. Code § 2698 *et seq.* (Marcelino Decl. ¶ 3, Exh. A, Complaint ¶ 2.)

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

18.

69.     Article 2 of the CBA specifically states that the Union is the sole and exclusive bargaining representative of the employees covered by the CBA. (Lehmann Decl., ¶ 8, Exh. A, Art. 2). The CBA covers the employment conditions at issue in Plaintiff's Complaint, including time worked, wages and wage payment, overtime, meal and rest periods, and grievance and arbitration procedures. (Lehmann Decl., ¶ 8, Exh. A, Arts. 8, 9, 10, 11, 12, 21, and 36).

**B.**     **Plaintiff's Failure to Reference the CBA or Section 301 of the LMRA in His Complaint Does Not Preclude Removal**.

70.     The Complaint omits the fact that Plaintiff was a member of the Union or that a CBA governed his employment. However, a plaintiff may not be permitted to "artfully plead" a complaint to conceal its true nature. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (holding that plaintiff's state law claim was preempted even though operative complaint made no mention of a collective bargaining agreement); *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), overruled in part on other grounds in *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009).

71.     Thus, the fact that Plaintiff has not made specific reference to Section 301 in his Complaint does not preclude removal. *See Milne Emp. Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991). The Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder*, 702 F.2d at 191.

72.     An artfully pled state law claim is properly "recharacterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

19.

court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[I]f a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises' under federal law.").

### C. **Resolving Plaintiff's Claims Requires Interpretation of the CBA**.

73. The Labor Code violations underlying Plaintiff's PAGA claim are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on an analysis and interpretation of a collective bargaining agreement. *See Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991); *see also Caterpillar Inc.*, 482 U.S. at 394. To analyze Plaintiff's claim, therefore, the Court will necessarily need to interpret the provisions of the relevant CBA.

74. The Court cannot simply look to state law to resolve Plaintiff's artfully plead claims for breach of a CBA. Plaintiff's claims cannot be adjudicated without interpretation of the numerous CBA provisions that governed Plaintiff's employment. Plaintiff's claim is based alleged Labor Code violations for failure to: (1) provide off-duty meal and rest periods; (2) provide accurate written wage statements; and (3) pay final wages following separation of employment.  (Marcelino Decl., ¶ 3, Exh. A, *see generally* Complaint.)

75. The applicable CBA contains specific language governing time worked, wages and wage payment, overtime, meal and rest periods, and grievance and arbitration procedures for disputes arising under the CBA. (Lehmann Decl. ¶ 8, Exh. A, Arts. 8, 9, 10, 11, 12, 21, and 36). Resolving Plaintiff's claim will require the Court to interpret each of these provisions in the CBA.

76. As an example, Plaintiff's state law claim based on Defendants' alleged failure to relieve the employee of all duties during their meal and rest periods is preempted by Section 301 of the LMRA because the claim requires the Court to analyze and interpret the CBA's Article 8, Hours of Works provisions.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

20.

77.     Critically, as all of Plaintiff's claims are, in essence, alleged violations of the CBA, the Court will necessarily have to interpret its grievance and arbitration provisions. (*See* Lehmann Decl., ¶ 8, Exh. A, Art. 21). Specifically, the Court must determine whether Plaintiff was first required to exhaust the grievance procedures, whether he did in fact exhaust those procedures, and whether he agreed to arbitrate all or some of his claims. Each of these questions is reserved for federal courts pursuant to the LMRA; indeed, Section 301 preemption aims to promote extra-judicial dispute resolution pursuant to the parties' agreed form of dispute resolution. *Curtis*, 913 F.3d at 1152 (observing "the labor arbitrator is usually the appropriate adjudicator for CBA disputes" and that "grievance and arbitration procedures provide certain procedural benefits, including a more prompt and orderly settlement of CBA disputes than that offered by the ordinary judicial process.") (internal citation omitted).

78.     Here, the applicable grievance and arbitration procedure set forth in the CBA covers "any problem, complaint, dispute or alleged violation of the provisions of this Agreement, or disagreement as to the interpretation and application of its provisions." (Lehmann Decl., ¶ 8, Exh. A, Art. 21). Accordingly, an alleged violation of the CBA is subject to its grievance and arbitration procedures, which serves the underlying purposes of the LMRA. Thus, no part of Plaintiff's claim may be resolved without interpreting provisions of the CBA.

79.     Plaintiff's claim is substantially dependent upon the interpretation of the CBA's terms and provisions. In fact, those terms and provisions govern all of the conduct which forms the basis for Plaintiff's Complaint, and are thus essential to the resolution of Plaintiff's claims. Therefore, removal to federal court is warranted.

## IX.    CONCLUSION

80.     Accordingly, although Defendant denies Plaintiff's claims as alleged in the Complaint, the jurisdictional minimum is satisfied for purposes of determining the amount in controversy, as it exceeds the $5,000,000 and, in the alternative, this Court

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

21.

1  has original jurisdiction under 28 U.S.C. §§ 1331 and 1441(a) and removal is therefore

2  proper under 28 U.S.C. §§ 1441 and 1446.

3      81.    WHEREFORE, Defendant hereby removes this action from the Superior

4  Court of the State of California, County of Santa Barbara, to the United States District

5  Court for the Central District of California.

6

7  Dated:   September 30, 2020

8

9                                          *s/ Lyndsey M. Marcelino*
                                           RACHAEL LAVI
                                           LYNDSEY M. MARCELINO
10                                         LITTLER MENDELSON, P.C.
                                           Attorneys for Defendant
11                                         The Okonite Company

12

13  4842-9922-2220.2 109525.1001

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

22.